IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ROBERT CASEY,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**GIRLS GALORE, INC. d/b/a Bliss Atlanta; GIRLS GALORE PHASE 2, INC.; K&J ENTERPRISE, L.L.C.; NICHOLAS A. STERGION, and GEORGE NAZERIAN,**<br><br>**Defendants.** | Civil Action No. _____ |

## COMPLAINT

Plaintiff Robert Casey, by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 8, brings this Complaint against Defendants Girls Galore, Inc. d/b/a Bliss Atlanta, Girls Galore Phase 2, Inc.; K&J Enterprise, L.L.C.; Nicholas A. Stergion, and George Nazerian, and shows the Court as follows:

**Introduction**

1.

This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., by a former exotic dancer employed by Defendants at Bliss Atlanta nightclub (hereinafter "Bliss") in Atlanta, Georgia, and is based on Defendants'

1

failure to pay minimum and overtime wages as required by the FLSA. While Defendants Girls Galore, Inc., Stergion, and Nazerian were Plaintiff's employers and failed to pay him minimum wages, Defendants Girls Galore Phase 2, Inc. and K&J Enterprise, L.L.C. are liable as successor entities to Girls Galore, Inc.

**Jurisdiction and Venue**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA § 16(b), 29 U.S.C. § 216(b), 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Defendants regularly conduct business in this judicial district, a substantial portion of the events giving rise to the claims herein arose in this judicial district, and both Defendants Stergion and Nazerian reside in this judicial district.

**The Parties**

4.

Mr. Casey is a natural person who resides within the Northern District of Georgia.

5.

Girls Galore, Inc. (hereinafter "Girls Galore") is a domestic for-profit corporation with its principal place of business located at 2284 Cheshire Bridge Rd NE, Atlanta, GA 30324.

6.

Girls Galore is subject to the personal jurisdiction of this Court.

7.

Girls Galore can be served with process via its registered agent, Nicholas A. Stergion, at 2284 Cheshire Bridge Road, Atlanta, Georgia 30324.

8.

Girls Galore Phase 2, Inc. (hereinafter "Girls Galore Phase 2") is a domestic for-profit corporation with its principal place of business located at 2284 Cheshire Bridge Rd NE, Atlanta, GA 30324.

9.

Girls Galore Phase 2 is subject to the personal jurisdiction of this Court.

10.

Girls Galore Phase 2 can be served through its registered agent, Jonathan L. Brown, at 2625 Piedmont Road, Atlanta, GA 30324.

11.

K&J Enterprise, L.L.C. (hereinafter "K&J") is a limited liability company organized under the laws of the State of Georgia with its principal place of business located at 2284 Cheshire Bridge Rd NE, Atlanta, GA 30324.

12.

K&J is subject to the personal jurisdiction of this Court.

13.

K&J can be served through its registered agent, Driedree Speler, at 7312 Blue Jay Way, Union City, GA 30291.

14.

Mr. Stergion is a resident of Fulton County, Georgia.

15.

Mr. Stergion is subject to the personal jurisdiction of this Court.

16.

Mr. Stergion can be served with process at his residence in Fulton County, Georgia, or wherever he can be found.

17.

Mr. Nazerian is a resident of Cobb County, Georgia.

18.

Mr. Nazerian is subject to the personal jurisdiction of this Court.

19.

Mr. Nazerian can be served with process at his residence in Cobb County, Georgia, or wherever he can be found

**Enterprise Coverage Under the FLSA**

20.

Defendants own and operate a business enterprise formerly known as Bliss in Atlanta, Georgia.

21.

In 2013, two or more employees of Bliss used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, beer, wine, non-alcoholic beverages, kitchen equipment, lighting equipment, office supplies and electronics.

22.

In 2014, two or more employees of Bliss used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, beer, wine, non-alcoholic beverages, kitchen equipment, lighting equipment, office supplies and electronics.

23.

In 2013, Bliss had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

24.

In 2014, Bliss had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

25.

In 2013, Bliss had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

26.

In 2014, Bliss had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

27.

In 2013, Bliss was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

28.

In 2014, Bliss was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

**Corporate Employer Under the FLSA**

29.

At all relevant times, Bliss was a nightclub club whose primary business is to provide entertainment in the form of nude and semi-nude male dancers and the sale of alcoholic beverages.

30.

Plaintiff Casey worked at Bliss as an exotic dancer from approximately July 20, 2013 through April 2014.

31.

At all relevant times, the business operations of Bliss were conducted through Defendant Girls Galore, Inc.

32.

At all relevant times, Girls Galore maintained all financial accounts used in the operation of Bliss, including its payroll account.

33.

At all relevant times, Girls Galore paid all costs associated with the advertising, marketing, and promotion of Bliss.

34.

At all relevant times, Girls Galore provided all facilities used in the performance of Plaintiff's dancer work at Bliss.

35.

At all relevant times, the work of dancers such as Plaintiff was an integral part of Bliss' business success.

36.

At all relevant times, Bliss dancers were not required to have any specialized skills, education, training, or knowledge.

37.

At all relevant times, Plaintiff was an "employee" as defined in FLSA § 3(e), 29 U.S.C. § 203(e) in connection with his dancer work at Bliss as a matter of economic reality.

38.

At all relevant times, Bliss was Plaintiff's "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d) as a matter of economic reality.

## Individual Employer Under the FLSA

39.

At all relevant times, Mr. Stergion and Mr. Nazerian (hereinafter collectively "the Individual Defendants") were the sole owners of Bliss.

40.

At all relevant times, the Individual Defendants had authority over the finances and operations of Bliss.

41.

At all relevant times, the Individual Defendants shared control over the employment practices and procedures of Bliss.

42.

At all relevant times, the Individual Defendants shared ultimate control over hiring and firing Bliss' managerial and administrative employees.

43.

At all relevant times, the Individual Defendants shared control over Bliss' policy of classifying dancers as "independent contractors" for tax purposes.

44.

At all relevant times, the Individual Defendants shared control over the terms of Plaintiff's working conditions, including all rules applicable to Bliss dancers.

45.

At all relevant times, the Individual Defendants shared authority over Bliss' policy and practice of having dancers work for tips only.

46.

At all relevant times, the Individual Defendants shared control over Bliss' policy and practice of having bartenders work for tips only.

47.

At all relevant times, the Individual Defendants shared control over Bliss' recordkeeping policies with respect to dancers' hours worked and monies received.

48.

At all relevant times, Mr. Stergion was an "employer" of Plaintiff as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

49.

At all relevant times, Mr. Nazerian was an "employer" of Plaintiff as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

**FLSA Minimum Wage Violation**

50.

At all relevant times, Plaintiff was not subject to any exemption from the minimum wage pay requirements of the FLSA.

51.

At all relevant times, Plaintiff was paid no wages whatsoever for his dancer work at Bliss.

52.

At all times material hereto, Plaintiff's sole form of remuneration for the work he performed at Bliss was the receipt of monies directly from customers.

53.

At all relevant times, the monies Plaintiff received directly from customers were "tips" within the meaning of the FLSA and relevant Department of Labor regulations.

54.

At all times material hereto, Defendants Girls Galore, Inc., Stergion, and Nazerian required Plaintiff to pay a portion of the tips he received to Defendants in the form of fees and fines.

55.

At all times material hereto, Defendants Girls Galore, Inc., Stergion, and Nazerian required Plaintiff to pay various club fees each shift he worked including house fees, DJ fees and breathalyzer fees.

56.

At all times material hereto, Defendants Girls Galore, Inc., Stergion, and Nazerian required Plaintiff to pay a portion of the tips he received directly to Defendants for reasons other than the pooling of tips among employees who customarily and regularly receive tips.

57.

The fees and fines described above constituted unlawful "kickbacks" within the meaning of the FLSA and relevant Department of Labor regulations.

**Successor Liability**

58.

On July 6, 2015, Mr. Nazerian and K&J Enterprise, L.L.C. executed a Stock Purchase Agreement and Management Agreement pursuant to which Mr. Nazerian agreed to sell his 50% stock ownership in Girls Galore to K&J for the sum of $452,000.

59.

Following the execution of the Management Agreement on June 11, 2010, K&J and its owner Jonathan L. Brown took over day-to-day management of Tease, which is the current trade name of Girls Galore.

60.

Prior to the execution of the Stock Purchase Agreement, Brown formed Defendant Girls Galore Phase 2, Inc. and opened bank accounts and a merchant account in its name.

61.

Since taking managerial control of the Business, Brown has used the accounts of Girls Galore Phase 2, rather than those of the Girls Galore, in conducting Tease's financial transactions.

62.

Mr. Stergion retains his 50% ownership in Girls Galore and has assisted Brown and K&J in transferring the finances of Girls Galore over to accounts held by Girls Galore Phase 2.

63.

On information and belief, the assets of Girls Galore, Girls Galore Phase 2, and K&J have been commingled and are treated as a single fund for practical purposes.

64.

Bliss/Tease's primary business operations have not changed substantially since the Stock Purchase Agreement was executed. Defendants' business remains an adult entertainment nightclub.

65.

Bliss/Tease's employees substantially have been retained since the Stock Purchase Agreement was executed.

66.

Bliss/Tease's business locus has remained unchanged since the Stock Purchase Agreement was executed; it continues to do business at 2284 Cheshire Bridge Rd NE, Atlanta, GA 30324.

67.

There has been substantial supervisory and managerial continuity at Tease since the Stock Purchase Agreement was executed.

68.

Girls Galore Phase 2 and K&J have assumed all substantial assets and equipment of Girls Galore since the Stock Purchase Agreement was executed.

69.

Girls Galore Phase 2 and K&J had actual notice of Girls Galore's potential FLSA liability prior to the execution of the Stock Purchase Agreement.

70.

Girls Galore will likely be unable to provide relief to Plaintiff or satisfy any judgment because its assets will simply be transferred to Girls Galore Phase 2 and K&J.

71.

On information and belief, prior to the execution of the Stock Purchase Agreement and Management Agreement, Defendant Girls Galore, Inc. would have been able to provide the relief sought by Plaintiff by making payments to Plaintiff out of the profits derived from the operation of Tease.

72.

On information and belief, Defendants K&J and Girls Galore Phase 2 will be able to provide the relief sought by Plaintiff by making payments to Plaintiff out of the profits derived from the operation of Tease.

**Willfulness**

73.

At all relevant times, Defendants have not relied on any formal opinion of the Department of Labor indicating that their dancer-compensation policies and practices are permitted under the FLSA.

74.

At all relevant times, Defendants have not relied on any advice—including but not limited to legal advice—indicating that their dancer-compensation policies and practices are permitted under the FLSA.

75.

Defendants' FLSA minimum wage violations were willful within the meaning of 29 U.S.C. § 215.

## CLAIMS FOR RELIEF

## COUNT ONE

## VIOLATION OF 29 U.S.C. §§ 206 AND 215
**(Minimum Wage Violations)**

76.

Paragraphs 1 through 75 are incorporated herein by this reference.

77.

At all relevant times, Plaintiff was entitled to be paid $7.25 for each and every hour worked in a given workweek.

78.

Defendants failed to pay Plaintiff the equivalent of $7.25 per hour free and clear for each hour worked for Defendants in any and all given workweeks.

79.

Defendants' failure to compensate Plaintiff the equivalent of $7.25 per hour for each hour worked for Defendants in any and all given workweeks is a violation of §§ 206 and 215 of the Fair Labor Standards Act of 1938, as amended.

80.

Defendants' violation of §§ 206 and 215 of the FLSA was willful and gives rise to a claim for relief under the FLSA for unpaid minimum wages for three years prior to the filing of this action, through the date of judgment in this action, liquidated damages in an amount equal to the unpaid compensation, declaratory relief, and reasonable attorneys' fees and expenses of litigation, pursuant to 29 U.S.C. § 216.

WHEREFORE, Plaintiff prays that this Court:

(a) Take jurisdiction of this matter;

(b) Grant a trial by jury as to all matters properly triable to a jury;

(c) Issue an Order holding Plaintiff to be an "employee" within the meaning of the FLSA;

(d) Issue an Order holding Girls Galore, Inc., Nicholas Stergion, and George Nazerian to be Plaintiff's "employers" as that term is defined under the FLSA;

(e) Issue an Order declaring that Defendants Girls Galore, Inc., Nicholas Stergion, and George Nazerian have failed to comply with the minimum wage requirements of the FLSA;

(f) Award Plaintiff payment of minimum wages for each hour worked, and liquidated damages equaling 100% of that amount, as required by the FLSA;

(g) Award Plaintiff a return of all kickbacks paid to Defendants, and liquidated damages equaling 100% of that amount, as required by the FLSA;

(h) Award Plaintiff prejudgment interest on all amounts owed;

(i) Award Plaintiff nominal damages;

(j) Award Plaintiff his reasonable attorney's fees and costs of litigation pursuant to 29 U.S.C. § 216(b);

(k) Issue an Order holding Girls Galore Phase 2, Inc. and K&J Enterprise, L.L.C. to be liable for the FLSA violations of Girls Galore, Inc. as bona fide successor entities;

(l) Award any and such other further relief this Court deems just, equitable and proper.

Respectfully submitted this 14th day of December 2016.

**DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC**

*/s/ Matthew W. Herrington*
Charles R. Bridgers
Georgia Bar No. 080791
Matthew W. Herrington
Georgia Bar No. 275411

COUNSEL FOR PLAINTIFF

3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
Telephone: (404) 979-3171
Facsimile: (404) 835-6168
charlesbridgers@dcbflegal.com
matthew.herrington@dcbflegal.com